AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Eastern District of California


FILED
JUN 0 2 2017
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. |
| MYRON DEVAL ARMSTRONG | ) | |
| | ) | 2:17-MJ-0093 AC |
| | ) | |
| Defendant(s) | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __June 2, 2017__ in the county of __Sacramento__ in the
__Eastern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21 U.S.C. Section 841(a)(1) | Possession with Intent to Distribute Marijuana |
| Title 18 U.S.C. 922(g) | Possession of a Firearm by a Felon |

This criminal complaint is based on these facts:

(see attachment)

☒ Continued on the attached sheet.

_____
Complainant's signature

Brian Nehring, Special Agent DEA
Printed name and title

Sworn to before me and signed in my presence.

Date: 6/2/17

_____
Judge's signature

City and state: Sacramento, California

Allison Claire, U.S. Magistrate Judge
Printed name and title

# AFFIDAVIT OF SPECIAL AGENT BRIAN NEHRING IN SUPPORT OF COMPLAINT:

STATE AND DISTRICT OF EASTERN CALIFORNIA
COUNTY OF SACRAMENTO

I, Brian Nehring, Special Agent of the Drug Enforcement Administration (DEA), being duly sworn, depose and state:

1. I am a Special Agent of the Drug Enforcement Administration and have been so employed since 1991. I am currently assigned to the San Francisco Field Division, Sacramento District Office of the DEA, specifically assigned to investigate federal narcotics offenses.

2. This affidavit is made in support of the issuance of a Criminal Complaint charging Myron Deval ARMSTRONG with violation of Title 21 U.S.C. Section 841(a)(1), Possession with Intent to Distribute Marijuana (a schedule I controlled substance), and Title 18 U.S.C. 922(g), Possession of a Firearm by a Felon.

3. Beginning in 2006 and continuing through the present, I received information from multiple confidential sources that Myron Deval ARMSTRONG was involved in the ongoing manufacture and distribution of various controlled substances, including marijuana, methamphetamine and cocaine. I received information from more than one source that ARMSTRONG had for several years been involved in the indoor cultivation of marijuana and that he had allegedly been shipping large quantities of marijuana to customers outside of California, in addition to obtaining pound quantities of methamphetamine and kilogram quantities of cocaine from various sources of supply.

## Myron ARMSTRONG's Criminal History

4. I made inquiries with the California Department of Justice (DOJ) which revealed that ARMSTRONG had an extensive criminal history including, but not limited to: an arrest in Sacramento County in 03-12-1985 for Burglary which was reduced to a misdemeanor conviction of Accessory (32 PC) resulting in a 5 days jail sentence; an arrest in Sacramento County in 09-02-1986 for Receive/Etc Known Stolen Property (496 PC); an arrest in 08-18-1988 in Sacramento County for Possession/Purchase Cocaine Base For Sale (11351.5 HS); an arrest in 02-02-1989 in Sacramento County for Possession of Narcotic Controlled Substance (11350 HS) which resulted in a mandatory Diversion program; an arrest in 03-30-1990 in Sacramento County for Possession Narcotic Controlled Substance (11350 HS) and Possession of Controlled Substance Paraphernalia (11364 HS); an arrest in 04-15-1992 in Sacramento County for Inflicting Corporal Injury on Spouse/Cohab which resulted in a conviction and termination of the Diversion program and a sentence of 30 days of jail; an arrest in Sacramento County in 07-15-1993 for Possession of a Controlled Substance (11364 HS) and Obstruct/Resist Executive Officer (69 PC); an arrest in Sacramento County

1

in 09-09-1993 for Receive/ETC Known Stolen Property (496 PC) resulting in a conviction and a 15 day jail sentence; a conviction in 10-25-1994 in Sacramento County for Possession of Narcotic Controlled Substance (11350 HS) resulting in a 90 day jail sentence; an arrest in Sacramento County on 06-04-1996 for Transportation/Sales of a Controlled Substance (11352 HS) and Felon/Addict/ETC Possess Firearm, resulting in a conviction for the 11352 HS charge and a 5 year probation period; an arrest on 07-10-1998 for Taking Vehicle W/O Owners Consent/Vehicle Theft; an arrest on 09-26-1998 in Sacramento County for Possession of Marijuana for Sale (11359 HS); an arrest in 12-26-1999 for Transport/Sell Controlled Substance (11352(A) HS); an arrest on 05-24-2000 in Sacramento County for Possession of Marijuana for Sale (11359 HS); arrests on 01-09-2003 in Sacramento County for Possession of a Substance with Intent to Manufacture a Controlled Substance (Methamphetamine) (11383(A) HS), Possession of Marijuana for Sale (11359 HS), Cultivation of Marijuana/Hash (11358 HS), and Perjury-Innocent Person Executed (128 PC) which resulted in a conviction for Marijuana cultivation and a 16 months Prison sentence; a 08-06-2004 Violation of Parole (3056 PC) resulting in an order to finish Prison term; arrests on 11-01-2006 in Sacramento County for Possession of a Controlled Substance for Sale (Methamphetamine 11378 HS) and Possession of Marijuana for Sale (11359 HS) resulting in a conviction for 11378 HS and a two year Prison term; an arrest on 05-18-2009 in Sacramento County for Possession of a Controlled Substance (11377(A) HS) resulting in a parole violation; and an arrest on 09-14-2010 in Sacramento County for Possession of a Controlled Substance (11350(A) HS).

### Recent Investigation

5. Beginning in 2015, I became involved in the investigation of Ibis Alberto Luis FLORES whom was identified as a large methamphetamine, heroin and cocaine dealer in the Sacramento area and throughout the United States. In an undercover capacity I purchased several pounds of methamphetamine and multiple ounces of heroin which were identified as having been supplied by FLORES. As a result of this investigation, a federal arrest warrant was issued for FLORES. FLORES was arrested on 06-01-2017 in Sacramento at which time approximately a pound of methamphetamine, a quarter pound of heroin and several firearms were seized.

6. During the course of this investigation I learned through surveillance and phone toll analysis that FLORES and ARMSTRONG were close associates who were in frequent physical and telephone contact and I formed the belief that FLORES was supplying ARMSTRONG with drugs. I also learned that ARMSTRONG had been identified in an ongoing financial investigation as potentially being engaged in money laundering, money structuring and suspected drug proceeds funnel account activities which was believed to be in an effort to move suspected drug proceeds from other states to ARMSTORNG in California through financial accounts in a way as to avoid detection. Based upon this investigation, DEA SA Max Lashchuk authored search warrants for ARMSTRONG's identified residence at 31 Cadman Court, Sacramento, California and his business located at 990 and 998 Arden Way,

2

Sacramento, California which were authorized by the Honorable Kendall J. Newman on June 1, 2017.

## Execution of Search Warrant at 31 Cadman Court, Sacramento, California on June 2, 2017

7. On June 2, 2017, at approximately 7:00 a.m., other officers and I approached 31 Cadman Court, Sacramento, California and made knock-and-announce at the front door that we were law enforcement officers prepared to execute a federal search warrant. After waiting a reasonable amount of time and receiving no response, officers made forced entry through the front door. ARMSTRONG and his wife, Joanne DARANIKONE, and their minor children were located upstairs in the master bedroom. No other people were located inside the residence.

8. During an initial search of the residence, I immediately noted that the entire 3-car garage had been converted into a sophisticated indoor marijuana cultivation operation. I noted that there were metal halide and sodium pressure grow light hoods in this area as well electrical ballasts and a sophisticated irrigation and ventilation system assembled in this room with liquid plant nutrients, pumps, fans and timers. There were several hundred marijuana plants in this location. I further noted that there were a large number of large marijuana plants filling the back patio yard as well. A subsequent count of the marijuana plants at this residence determined there were 925 marijuana plants present. I also noted that this area was alarmed and had apparent video camera surveillance.

9. I spoke to ARMSTRONG in the downstairs kitchen. I advised ARMSTRONG that although he was not under arrest at that time I was advising him of his Miranda rights which he claimed to understand and he agreed to speak with me. I displayed a copy of the search warrant for the residence to ARMSTRONG and explained why officers were there and I asked ARMSTRONG if there were any firearms in the residence I should be aware of. ARMSTRONG stated that when he had heard the officers knocking on his front door he had panicked believing he was being robbed and he had retrieved a pistol in his master bedroom where he had been asleep but when he realized it was actually the police he had run into the master bedroom bathroom and placed the pistol in the water tank of the toilet. Officers subsequently located a loaded Smith and Wesson M&P Shield 9mm semi-automatic pistol, serial #HLU1538, in this location. I was advised that an NCIC check of the serial number for the weapon showed it as listed as being stolen. I know from my training and experience and from having consulted with the ATF Interstate Nexus coordinator that Smith and Wesson firearms are manufactured outside of the state of California. ARMSTRONG told me that he knew he shouldn't possess a firearm as a felon but that he had been robbed in the past and someone had recently shot at him. I advised ARMSTRONG at this time that he was officially being arrested for possessing the firearm.

3

10. ARMSTRONG subsequently related that he believed that there was a large amount of US Currency in his master bedroom closet which agents subsequently located; this money has not been counted as of this time but appears to be in the tens of thousands of dollars. During a search of ARMSTRONG's Cadillac Escalade parked in the driveway officers located suspected cocaine and methamphetamine in an area inside the dashboard console; these suspected drugs have not been weighed as of yet but there appeared to be approximately an ounce of cocaine. ARMSTRONG told me he possessed some cocaine and methamphetamine inside the vehicle for his personal use. During a search of ARMSTRONG's Chevrolet Corvette in the driveway officers located suspected Oxycodone tablets. ARMSTRONG identified a picture of FLORES and stated that he borrowed FLORES's vehicles to transport marijuana cultivation soil.

11. I was informed by SA Lashchuk that during the execution of the search warrant at ARMSTRONG's alleged auto business on Arden Way officers located over ten pounds of marijuana bud and equipment and apparatus commonly utilized in marijuana cultivation.

12. Based on the foregoing, I believe that probable cause exists to believe that Myron Deval ARMSTRONG did on June 2, 2017, Possess with Intent to Distribute Marijuana in violation of Title 21 U.S.C. Section 841(a)(1), and did Possess a Firearm as a Felon in violation of Title 18 U.S.C. 922(g).

Subscribed to and sworn before me this 2nd day of June 2017 at Sacramento, California.

Brian Nehring, DEA

Allison Claire
U.S. Magistrate Judge

Paul A. Hemesath, Assistant United States Attorney
Approved as to form

4